# CHARLESTON.

COFFMAN *et al. v.* COFFMAN *et al.*

Submitted June 10, 1895—Decided November 13, 1895.

1. ADVANCEMENTS—ANCESTOR'S ESTATE.
    Where a child has received a certain portion in full of his share of his father's estate, on the death of his father he is ordinarily barred from further participation in the distribution or partition of the residue of such estate, and, in case of his death before his father's, his children will be barred from such participation for the same reason, and to the same extent, their father would be barred.

2. ADVANCEMENTS—ANCESTOR'S ESTATE.
    The fifth point of the syllabus in the case of *Roberts* v. *Coleman,* 37 W. Va. 143 (16 S. E. Rep. 482) approved.

M. M. THOMPSON and C. W. LYNCH for appellants, cited Thorn. Gifts and Advance. 540, 541, 542, 553, 586; Code, c. 78, s. 13; 2 Min. Insts. 445, 446; 4 Kent, Comm. 418, 419 n.b.; 3 Metc. 270; 2 Grant (Pa.) 304; 40 Pa. 57; 70 Am. Dec. 94; 36 How. Pr. 301; 1 West. Rep. 382; 118 Ill. 638; 5 Pick. 527; 16 Conn. 383; Bouv. Dict. 463; Anderson's Dict. 349.

JOHN BASSELL and EDWIN MAXWELL for appelles, cited 37 W. Va. 143; 59 Ind. 39; 1 Am. & Eng. Enc. Law 219.

DENT, JUDGE:

The heirs of John G. Coffman, deceased, instituted a suit in the Circuit Court of Harrison county for the distribution and partition of his estate. At the May term, 1894, a decree was entered excluding John M. Coffman, son, and Frederick W. Coffman, Ulysses S. Coffman, Winfield B. Coffman, Willis F. Coffman, and John N. Coffman, grandchildren, being the children of Alonzo B. Coffman, a deceased son, from participating in said estate by reason of advancements made during the lifetime of decedent to said sons. And this is the sole question presented by this appeal.

First as to John M. Coffman. On the 2d day of April, 1873, he received from his father, by way of advancement, as his full share of his estate, the sum of two thousand six hundred dollars, and executed to him the following writing, to wit: "Know all men by these presents, that I, John M. Coffman, son and heir of John G. Coffman, of the county of Harrison and state of West Virginia, for and in consideration of the sum of two thousand and six hundred dollars to me in hand well and truly paid by my father, the said John G. Coffman, have remised, released, and forever release, and by these presents do forever, for myself and my heirs, remise, release, and forever quit-claim, to any part or portion of the estate of the said John G. Coffman that he now has or may have during his lifetime, believing that the advancement of the said two thousand six hundred dollars at this time is fully equal to one heirship in said estate. And I, the said John M. Coffman, do by these presents quitclaim and release any claim or interest I have or may have in the estate of the said John G. Coffman as heir, both at law and equity. Witness the following signature and seal this 2nd day of April, 1873. John M. Coffman. (Seal.") "Attest: B. F. Coffman." No proof was required to identify this writing, as its execution is alleged in the bill, and admitted in the answer of the obligor. He now complains that because a distributive share of his father's estate at the present time would largely exceed the amount received by him in 1873, he should be permitted to bring his advancement into hotchpot, and receive a decree for the excess. If the excess were the other way, he would have no ground for complaint or for grievance, but, having apparently the bad end of the bargain, he seeks to repudiate it.

This question has already been determined by this Court in the case of *Roberts* v. *Coleman*, 37 W. Va. 143 (16 S. E. Rep. 482). But appellant's counsel ask the reviewal of that case for the reason that the Court's attention was not called to section 13, chapter 78, of the Code; 2 Minor 445; and the case of *Needles' Ex'r* v. *Needles*, 7 Ohio St. 432. The Court certainly was familiar with the statutory provision relating to advancements, without having its attention expressly di-

rected thereto. The reference to Minor is not in point, as the question treated of is as to the effect of verbal declarations in determining the character of an advancement, the law being rightly stated "that a parent can not, by mere declarations of intention, make that an advancement which is not such by law, nor prevent that from being an advancement which the law plainly declares to be one." But he can do so by will, as his power over his undisposed estate is absaolute. Nor is the case of *Needles' Ex'r* v. *Needles, supra,* "exactly in point." In that case the parent had advanced to some of his children, as he supposed, in full of his estate, Afterwards, by will, he made his other children equal, but left a residuum of his estate undisposed of, having entirely overlooked the same. The court held that this residuum should be divided equally among all the children, because the parent had overlooked the same in the division of his estate equally, as well when he made an advancement in full to some as when he made the others equal by will. The plain question here, however, is, can a parent, at the instance of a child, or with his acquiesence, advance to him out of his estate a certain portion, whatever it may be, which shall be deemed equivalent to the full share which such child may be otherwise entitled to by law at the death of such parent? It is a rule of the common-law that no one can be the heir of the living, and that, therefore, no child can release or quitclaim his interest in his parent's estate, for the reason that he has nothing to release or quitclaim, as he may never be the heir of his parent. This rule is modified by the law of advancements. If the statute had provided that estates should descend to "children and their descendants," and had stopped there, then the rule that no one is heir of the living would apply in full force, and every estate would be divided equally among the heirs, notwithstanding any gift or advancement made by the parent during his lifetime. But the statute goes further, and requires that all advancements made to those seeking to share in the partition or distribution must be brought into hotchpot, and thereby every child, to the extent of the advancements made to him, becomes the heir of the parent in actual enjoyment of his portion, even

though such parent be not yet dead. So the parent has the lawful right to advance to the child the full portion that the child would be entitled to as an heir at the time of his death. The parent having the right to make the advancement, and the child having the right to receive it, they have the right to agree on a certain fixed amount, the present acceptance and use of which shall be deemed equivalent to a full distributive share of the estate at the death of the parent, whenever that may occur. And when a child accepts and uses such an advancement he is estopped from denying the express conditions thereof contained in the instrument by virtue of which he received it. If he does not want to be bound thereby, he should not receive it. Sometimes the present use of a certain sum is worth more to a child than the uncertain prospect of sharing in a parent's estate, although the future share may, in the end, amount to many times its present value. Therefore the law kindly permits child and parent, taking into consideration the estate of the parent, the uncertainty of life, the precarious nature of property and wealth, and the ages, necessities, and surroundings of both, to fix on a certain amount which, received by the child, shall be deemed equivalent at the time of the receipt thereof to a full distributive portion of the parent's estate at the time of his death. This is just and equitable, and what was done in this case, as shown by the sealed instrument or receipt signed by the appellant. There is no good reason advanced for changing the decision of this Court in the case of *Roberts* v. *Coleman, supra,* and it is therefore approved.

The same principles govern the case of Alonzo B. Coffman, deceased. He, according to his solemn acknowledgment, acceptance and enjoyment, received a full share of his father's estate, and is bound thereby. The advancement to him was by deed, and was in consideration in full of his interest in his father's estate, "now and hereafter." He being dead, his children claim they do not take through him, but directly as heirs of their grandfather; yet they admit that they are willing and legally bound to bring the advancement received by him into hotchpot. This being done, defeats their right to any further portion of the grandparent's estate, for the

reason that, in accordance with the solemn admission of their father, the sum received by him in advance at the time so received by him was a full equivalent to what his share would have been at the time of his father's death, and therefore fully equal to the shares now received by the other heirs. This may not be true in fact, but it is true in law. The son could alone determine what sum would be a full advancement to him, and justly, as it turned out in this case. If he had refused to accept the advancement, he would never have enjoyed any portion of his parents estate, for he died before the time of legal distribution.

The grandchildren can no doubt see the arrangement operated justly towards their father, but regard it as unjust in so far as they are concerned. They and the court must be governed, not by a sense of abstract equity, but by the statutory provisions relating to the descent and distribution of estates. This is a matter entirely of legislative control. The legislature has the authority to disinherit all grandchildren, or to provide that all estates should descend to the children, and, in case of no child, then to the grandchildren; but it has seen fit to make the following provisions govern the descent of estates to grandchildren: *First.* As contained in section 1, chapter 78, of the Code. All estates shall descend to children and their descendants. *Second.* Where a part of the children are dead and part living, the issues of those that are dead shall take *per stirpes* or by stocks; "that is to say, the shares of their deceased parents." Section 3, same chapter. *Third.* Under section 13, any advancements made to a child, deceased, must be brought into hotchpot by such child's issue; in this case the grandchildren.

The grandchildren say here they are ready to bring the amount advanced to their father into hotchpot. The law says they must do this, or be excluded from the distribution. When brought in, it is found that the father agreed that the amount so received by him should be deemed equivalent to his full share of the estate. The law says, "Your father has received his full share, and for that reason, you, the grandchildren, are not entitled to anything." The grandchildren answer that "the amount received by our father is not equal

to the shares received by the other heirs." The law replies: "Your father agreed that the present use of a certain sum of money or amount of property should be deemed equivalent to a full share of your grandfather's estate at the date of his death, and by that agreement you are bound, and you can not now be heard to say that he did not receive that which is equivalent to a full share of the estate, although, by a present comparison of the two sums, one may appear greatly in excess of the other. Your father's use and enjoyment must off-set any excess of the shares over his advancement." This is just as between the children. And grandchildren, as long as any child is alive, can take no more than their parent could take if living. This is the law. The legislature may change, alter or modify it if it works a hardship. The court can do nothing but enforce it. Such has been the conclusion of the courts of other states in construing similar statutes. *Quarles* v. *Quarles,* 4 Mass. 680; *Kenney* v. *Tucker,* 8 Mass. 143; *Simpson* v. *Simpson,* 114 Ill. 603 (4 N. E. Rep. 137 and 7 N. E. Rep. 287); Thornt. Gifts, § 551.

For the foregoing reasons the decree complained of is affirmed.