JOHN DONOUGH et al. Appellees, vs. EDWARD GARLAND
et al. Appellants.

*Opinion filed October 27, 1915.*

1. REAL PROPERTY—*the expectancy of a prospective heir may be
released or assigned.* The expectancy of a prospective heir of a
living person may be released to the ancestor or assigned to a
stranger, and in case of a release to the ancestor a court of equity
will enforce the contract for the ·benefit of the other heirs.

2. SAME—*effect of release by an heir presumptive.* A release
by an heir presumptive of his expectancy operates as an extinguish-
ment of the right of inheritance, cutting it off at its source, and
such release is binding not only upon him but upon those who take
as heirs in his place.

3. SAME—*effect of assignment of expectancy of heir.* Where
the expectancy of an heir is assigned to another and not released
the right of inheritance still exists and the assignment is enforced
in equity as a contract to convey the legal estate or interest when
it ceases to be an expectancy and becomes a vested estate; but if
the legal estate never vests in the assignor the assignee acquires
nothing. (*Simpson* v. *Simpson,* 114 Ill. 603, explained.)

APPEAL from the Circuit Court of LaSalle county; the
Hon. EDGAR ELDREDGE, Judge, presiding.

BROWNE & WILEY, JOHN GARLAND, and L. B. OLM-
STEAD, for appellants.

H. M. KELLY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The appellees, who are the seven children and heirs-
at-law of Margaret Donough, a deceased daughter of
Thomas Garland and Mary Garland, filed their bill in this
case in the circuit court of LaSalle county against the ap-
pellants, Katherine Garland and Edward Garland, (the
latter in his own right and as administrator of the estate
of Mary Garland,) for a partition of real estate owned

by the said Thomas Garland and Mary Garland. The bill was answered and the alleged title of the complainants to a share of the real estate which Mary Garland owned on October 26, 1892, in the real estate of Thomas Garland was disputed, on the ground that Margaret Donough had conveyed her interest in the same to the defendants, Edward Garland and Katherine Garland. The chancellor found against the defendants and entered a decree for partition of all the real estate described in the bill. From that decree this appeal was prosecuted.

Thomas Garland, father of the defendants and grandfather of the complainants, died intestate in 1869, leaving Mary Garland his widow, and Edward Garland, Katherine Garland, Lizzie Garland, Mary Jane Garland and Margaret Garland, (afterward Margaret Donough,) his children and heirs-at-law. He owned three tracts of land, containing about seventy acres. After his death Lizzie Garland died intestate, leaving her mother, brother and sisters her heirs-at-law. Afterward Mary Jane Garland died intestate, leaving her mother, brother and sisters her heirs-at-law. On October 26, 1892, Margaret Donough and John Donough, her husband, executed their quit-claim deed to Edward Garland and Katherine Garland, conveying all interest in the real estate in question, and the deed contained this clause: "Intending to convey all interest that I now have or may hereafter acquire except through the grantees, in and to any lands or real estate of which Thomas Garland died seized or in which said decedent had any interest at the time of his death, and also all lands and real estate the title to which is now in Mary Garland, widow of said decedent, or in which said Mary Garland may have any interest or supposed interest or title in trust for said estate of Thomas Garland, deceased." After the execution of the deed Mary Garland acquired other real estate, but the quit-claim deed was limited to lands which she owned at the time it was made, and it is not

claimed that the deed was effective to release or convey any interest in such real estate. On the other hand, there is no dispute of the claim that Margaret Donough by her quit-claim deed conveyed all interest that she had in the property of which her father, Thomas Garland, was the owner at his death, the title of which had vested in her as his heir or the heir of her sisters, Lizzie Garland and Mary Jane Garland. The question is whether, in addition to the title Margaret Donough then had, she conveyed her expectancy as heir of her mother to the extent of her mother's interest in lands that had descended to her as heir of her deceased daughters, Lizzie Garland and Mary Jane Garland, which on the death of her mother might by operation of law vest in the grandchildren as heirs-at-law of their grandmother.

The expectancy of a prospective heir of a living person may be released to the ancestor or assigned to a stranger. In the case of a release to the ancestor a court of equity will enforce the contract for the benefit of the other heirs, and an assignment or transfer of an expectancy operates in equity as a contract by the assignor to convey the legal estate or interest when it vests in him, which will be enforced in equity when the expectancy has changed into a vested interest. (3 Pomeroy's Eq. Jur. sec. 1287.)

The questions of the right to release or assign an expectancy, and the effect of the release and assignment, have been before the court at different times. In *Bishop* v. *Davenport,* 58 Ill. 105, a bill was filed for partition, assignment of dower and distribution of the personal estate of Joel Gunter, deceased. There were children of two marriages, and the children of the first marriage had each received $100 in money or property, except Joel Gunter, Jr., who received $800, and each gave a receipt in full of his or her share of the father's estate. The complainants offered to bring their advancements into hotchpot, and alleged that Joel Gunter, Jr., was not entitled to any share

of the estate. The court held that the various sums received by the children were not received by way of advancements but were received in full payment and satisfaction of the expectancies of those children who were competent to contract. In *Galbraith* v. *McLain*, 84 Ill. 379, a bill was filed to enforce the specific performance of a contract made by John Galbraith with his son, Jarrot N. Galbraith, by which the father conveyed to the son fifty acres of land as the son's share of his father's estate. The agreement was by parol but the court enforced the performance of the contract. In *Kershaw* v. *Kershaw*, 102 Ill. 307, Joseph Kershaw had conveyed lands to his son, John W. Kershaw, and the deed contained a statement that the land was deeded as an advancement out of the estate of the grantor and the deed was accepted by the son as his full and entire share of his father's estate. The circuit court decreed that the land should be brought into hotchpot and valued as unimproved land as of the date of the death of the father. This court reversed the decree, and held that the conveyance was not made as an advancement although it was so stated in the deed, but the property was received as the son's full share of the estate and was binding upon him in favor of the other heirs. In *Longshore* v. *Longshore*, 200 Ill. 470, the son had accepted a warranty deed from his father of eighty acres of land, and the deed contained an agreement that it was made by the grantor and accepted by the grantee as his full share of the estate of the grantor. It was held to constitute a release of the expectancy of the son as an heir of his father. In *Bolin* v. *Bolin*, 245 Ill. 613, Nathan W. Bolin accepted a deed from his father in full settlement of his share in the father's estate, and it was held that the contract was sufficient to bar the son from participating in a division of the property.

There have been other cases involving the same principle. In *Parsons* v. *Ely*, 45 Ill. 232, there was a marriage

settlement in which the intended husband, James A. Parsons, released all his interest in expectancy in the property, real and personal, of his prospective wife, Sarah A. Ely. The wife died leaving one child, and afterward the child died. The husband, James A. Parsons, filed his bill to recover, as the only heir-at-law of the child, the legal title to premises of which his wife was the equitable owner. The court held that the expectancy, although contingent, was a proper subject of contract, and the decree of the court dismissing the bill was affirmed. In *Crum* v. *Sawyer*, 132 Ill. 443, there was a marriage contract wherein John W. Crum had released to his wife all interest in her estate in the event he should survive her. The wife died, leaving her husband and two uncles her heirs-at-law. The husband filed his bill for partition of the lands between himself and the two uncles, but the court said it was well settled that an assignment or release of the expectancy of an heir would be enforced in equity, after the death of the ancestor, as a right of contract, and that an assignment operates by way of present contract to take effect after, and attach to the things assigned when and as soon as they come into existence. In *Hudnall* v. *Ham*, 183 Ill. 486, there was a controversy over an ante-nuptial agreement by which the wife had agreed upon a sum in lieu of her rights in the husband's estate, and the court said that contingent interests and expectancies, and things having no present existence but resting only in possibility, may be assigned so as to be binding in equity, and the assignment will be enforced by a court of equity after the subject matter of it has come into existence.

In all of these cases the agreement was between the heir presumptive and the person from whom he would inherit, and the contract was in each case held to constitute a release of the interest of the heir, which was enforced for the benefit of the other heirs. In other cases the expectancy of an heir presumptive has been assigned or con-

veyed to some other person, and in those cases the assignment has been regarded as a contract enforceable in equity against the assignor. In *Hudson* v. *Hudson,* 222 Ill. 527, John W. Hudson in the lifetime of his father conveyed to his brother, Andrew I. Hudson, his expectancy as an heir of his father, Joel L. Hudson, who executed a will, in which he gave to John W. Hudson and two other sons five dollars each and divided the remainder of his estate among other children. It was held that the conveyance amounted to a sale of the expectancy of John W. Hudson in his father's estate to Andrew I. Hudson. The suit was between the two brothers after the death of the father and the agreement was enforced. There was a different situation in *Thomas* v. *Miller,* 161 Ill. 60, where the grantor of the expectancy, at the time she made the deed and at her death, had no title. The bill was filed by the widow and administratrix of John A. Thomas, deceased, for the assignment of dower and partition. John A. Thomas was the youngest son of Gideon Thomas, who died leaving a will, in which John A. Thomas was named as the residuary legatee, and in case of his death without leaving heirs of his own the whole was to revert to the heirs of the testator. Lucy Jessop, a daughter of the testator, in 1862 executed a deed to John A. Thomas, in which she and her husband undertook to convey her interest in the lands of which Gideon A. Thomas died seized, to John A. Thomas. Lucy Jessop, the grantor in the deed, died in 1886, and upon the death of John A. Thomas, in 1894, the title to the land became vested, by virtue of the will, in the heirs of Gideon A. Thomas. Lucy Jessop was not living and was not an heir, but her children were, and the title passed to them. As she had no title to the land up to the time of her death nothing passed by the deed. In *Golladay* v. *Knock,* 235 Ill. 412, William Golladay had made a warranty deed purporting to convey his contingent interest in certain premises. He died before the life tenant and no

title ever vested in him. The court said that a contingent remainder may be conveyed by a warranty deed so as to vest title in the grantee, but where the grantor of such an interest dies before the contingency happens upon which the estate is to vest, nothing passes by such a deed. The court said that had William Golladay survived the life tenant the appellants would have succeeded to his share of the estate and the deed would have been binding upon him and his heirs after his death.

There are some things in the opinion in the case of *Simpson* v. *Simpson,* 114 Ill. 603, which without a full consideration of the opinion might lead to a wrong conclusion. John Simpson, Sr., had conveyed to his son, Amos P. Simpson, certain lands, and the son had given his father a receipt acknowledging the lands received by him to be in full of all his interest in his father's estate. The son died prior to the death of his father, leaving three children, who claimed an interest in the estate. The superior court of Cook county held the release valid against the heirs of Amos P. Simpson and the Appellate Court reversed the decree. This court held that the release was good against the heirs and the judgment of the Appellate Court was reversed. The court called attention to the statute concerning advancements, which provided that on partition or distribution of an estate the advancement should be brought into hotchpot, and that there was no offer of the grandchildren to return the advancement. While, however, the court treated the conveyance as an advancement, it was said that it was an advancement in full, and the advancement being regarded as one in full, the property conveyed could not come into hotchpot and appellees could not share in the distribution of the estate. Mr. Chief Justice Mulkey filed a separate opinion, saying the grandchildren must take, if at all, *per stirpes,* and consequently their supposed rights were not superior to those of the father if he were living, and that the statute concerning

advancements was merely declaratory of the common law, by which he doubtless meant the law in the absence of a statute, since an expectancy was not transferable at the common law. In *Kershaw* v. *Kershaw, supra,* the court had held that the deed made as a release of the expectancy of the grantee in the grantor's estate was not an advancement although the deed expressly stated that it was, and it is quite evident that a release of an expectancy as heir is not within the terms of sections 4 and 8 of the Statute of Descent, which relate to advancements received by a child or lineal descendant toward his share of the estate. Notwithstanding what was said in *Simpson* v. *Simpson, supra,* concerning the statute and the release as an advancement, the agreement was enforced as a release.

From this review of the decisions it will be apparent that a release by an heir presumptive of his expectancy operates as an extinguishment of the right of inheritance, cutting it off at its source. The line of inheritance is ended by the release made by the one having the expectancy at the time, and the release is binding not only upon him but upon those who take as heirs in his place, otherwise a release would often be ineffective. That would always be the case where the one executing the release does not survive the one to whom the release is made although he has himself received the consideration for the expectancy. If, however, the expectancy is assigned to another, the right of inheritance is not extinguished but still exists, and the assignment is enforced as a contract to convey the legal estate or interest when it ceases to be an expectancy and becomes a vested estate. The assignee is regarded as bargaining for a legal interest depending on a future, uncertain and contingent event. The assignee acquires a right to the legal estate if it ever vests in the assignor, but if it does not, he acquires nothing. In this case Edward Garland and Katherine Garland by the conveyance to them became entitled to enforce in equity a right to an interest in lands

in case the interest should ever vest in Margaret Donough. The estate or interest did not vest in the grantor and the chancellor did not err in his findings and decree.

The decree is affirmed.                         *Decree affirmed.*