ANDERSON *v.* FORBES *et al.*

(*Jackson*, April Term, 1935.)

Opinion filed July 1, 1935.

D. M. GUINN and THOMAS E. MITCHELL, both of Johnson City, and DENNIS ERWIN, of Erwin, for appellants.

Cox, TAYLOR & EPPS and W. E. MILLER, all of Johnson City, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

William Forbes died intestate in Carter county, Tennessee, on October 11, 1934, leaving an estate consisting of both realty and personalty.

The bill herein was filed by appellee, Mrs. Venia Anderson, a daughter of William Forbes, deceased, against the children and grand children of her deceased brother, John Forbes, and others, for the purpose of having the whole estate left by William Forbes divided equally between herself and her sister, Ollie Hughes, subject to the rights of the widow of William Forbes.

It appears from the bill that William Forbes and John Forbes entered into the following settlement, which was properly acknowledged and recorded in the register's office of Carter county:

"This indenture, made this the 19th day of April, 1927, by and between J. F. Forbes and wife, Lydia Forbes, of Carter County, Tennessee, parties of the first part and W. M. Forbes of Carter County, Tennessee, party of the second part:

"Witnesseth:

"That the parties of the first part, for and in consideration of the sum of Thirty Three Hundred and Sixty Dollars ($3,600.00) to them in hand paid, by the said party of the second part, the receipt of which is hereby acknowledged, have granted, bargained, sold and conveyed, and do hereby grant, bargain, sell and convey unto the said party of the second part, all their title, interest, and estate, legal and equitable in and to any and all lands estate and realty, they may now have or hereafter have in and to the lands, estate and realty of the said party of the second part, this conveyance embraces any and all interest, that the said first parties, may have in and to the real estate of lands, which said second party may now have or may die seized of. Said first parties also transfers and conveys and releases unto said party of the second part, any and all interest or share they may now have or hereafter have, in all and any personal effects, moneys, stock, and all personalty whatever, which said second party may now have or may die seized of, the above named consideration being in full and final settlement and adjustment of any and all right, title, claim or interest, said first party may have in and to the property of every description and kind, of the said second party at the time of his death, and which he is now possessed or seized of.

"The above named consideration, a portion or a part of which (about twenty-five hundred dollars and accrued interest) being settled or released, by said party of the second part, said amount being secured under and by a deed of trust, to said party of the second part, by said parties of the first part, and which deed of trust, bears date, March 4th, 1924, and recorded in Book No. 27, page

411, of the Registers Office of Carter County, Tenn. And which deed of trust said party of the second part, releases of record, as a part of the consideration herein mentioned. Also as a further consideration, said second party, surrenders unto said first parties, their two promissory notes, bearing date, January 6th, 1925, for one hundred dollars, one note for two hundred dollars, bearing date January 6th, 1925, and the further consideration of five hundred dollars, in hand paid, the receipt of which is hereby acknowledged, all of and the total amount of the consideration as above set out being the sum of Thirty-Three Hundred and sixty dollars.

"Said consideration being in full and final settlement of our undivided interest in and to all and any property, personal, mixed, or real said first parties may have or hereafter have in and to the property of party of the second part.

"In witness whereof, the said parties of the first part have hereunto set their hands and seals, this the 19th day of April, 1927.

 "J. FORBES,

 "LYDIA FORBES."

Appellants herein filed an answer and cross-bill to the original bill, wherein they averred that their father, John Forbes, predeceased their grandfather, William Forbes, and that the release made by John Forbes to William Forbes in nowise affected their rights to inherit from their grandfather, William Forbes, under the statutes of descent and distribution. The relief sought on the cross-bill was that said release be declared null and void, and the same be canceled, and for naught held in so far as the rights of cross-complainants are concerned.

Appellee filed a demurrer to the cross-bill based on

the ground that John Forbes executed the release to his father, William Forbes, for a consideration expressed in the instrument itself, and that such instrument constitutes a settlement and release of all of John Forbes' interest in and to his father's estate, binding not only upon John Forbes in his lifetime, but also upon his children and heirs at law.

The chancellor sustained the demurrer and dismissed the cross-bill, holding that cross-complainants were cut off from participating or taking any interest in the estate of William Forbes, deceased, by virtue of said release. From the action of the chancellor in sustaining the demurrer and dismissing the cross-bill, an appeal was prayed and granted to this court.

The three assignments of error made here raise but one question, that is, whether appellants are entitled to share in the estate left by their ancestor, William Forbes, notwithstanding the release and settlement made by their father, John Forbes, to and with William Forbes.

Under the statutes of descent and distribution, Code, section 8380(a), appellants are entitled "to the same portion of the estate of the deceased as their parent would have been entitled to if living." Section 8402a of the Code is as follows:

"*Advancements to be collated.*—All advancements, whether by settlement or otherwise; in the lifetime of deceased, or by testamentary provision, shall be collated and brought into contribution in the partition and distribution of the real and personal estate of the deceased; those in real estate, first in the partition of real estate, and those in personal estate in the distribution of the personal estate."

■ Construing the two statutes together, *in pari materia,* it is evident that had John Forbes survived his father he would have been cut off from sharing in his father's estate by reason of the advancement of $3,360 made him, and which, under the release, he accepted as "being in full and final settlement and adjustment of any and all right, title, claim or interest" he might have in and to the property of his father.

■ The weight of authority is that an heir may by contract with his ancestor relinquish his expectancy in the latter's estate, and that the contract, if fairly made, and for a valuable consideration, will be enforced, and the releasor will be precluded from afterwards setting up a claim to any part of the ancestor's estate. 18 C. J., 862; 9 R. C. L., 143. This rule is recognized in *Gore* v. *Howard,* 94 Tenn., 577, 30 S. W., 730.

In *Power's Appeal,* 63 Pa., 443, cited with approval by this court in *Gore* v. *Howard, supra,* it was held that a father can make a contract with his son which will entirely bar the latter's claim as heir to any part of his parent's estate. In *Nesmith* v. *Dinsmore,* 17 N. H., 515, it was held that the receipt of a share of a parent's estate, being advantageous to the child, may be held a valid bar to any legal claim to any share of real as well as personal estate.

In *Coffman* v. *Coffman,* 41 W. Va., 8, 23 S. E., 523, 524, the court said:

"So the parent has the lawful right to advance to the child the full portion that the child would be entitled to as an heir at the time of his death. The parent having the right to make the advancement, and the child having the right to receive it, they have the right to agree on a certain fixed amount, the present acceptance and

use of which shall be deemed equivalent to a full distributive share of the estate at the death of the parent, whenever that may occur. And when a child accepts and uses such an advancement he is estopped from denying the express conditions thereof contained in the instrument by virtue of which he receives it."

In *Eissler* v. *Hoppel,* 158 Ind., 82, 62 N. E., 692, 694, the court said:

"'Public policy rather promotes, than condemns, such contracts. It often happens that children, after leaving home, and engaging in enterprises of their own, become so situated that the advancement, at a particular time, of a less amount than seems likely to be a full share at the death of an ancestor, will be more profitable to the recipient than to wait for the larger amount. In such cases, therefore, parents and other kindred, being presumed to be considerate of the rights and interests of those who are naturally the objects of their bounty, are left free to deal with their heirs as they may deem just with respect to the heir's ultimate portion, and may advance a part, or, as in any other matter, contract with the heir for a specific amount in full of all expectancy. . . ."

In *Longshore* v. *Longshore,* 200 Ill., 470, 65 N. E., 1081, a son had accepted a warranty deed from his father to certain land, and the deed contained an agreement that it was made by the grantor and accepted by the grantee as his full share of the estate of the grantor. This was held to constitute a release of the expectancy of the son as an heir of his father. A like holding was made in *Bolin* v. *Bolin,* 245 Ill., 613, 92 N. E., 530, and in *Donough* v. *Garland,* 269 Ill., 565, 109 N. E., 1015, Ann. Cas., 1916E, 1238. To like effect are *Smith* v. *Smith,* 59 Me.,

214; *Quarles* v. *Quarles,* 4 Mass., 680; *Kenney* v. *Tucker,* 8 Mass., 143; *Summerville's Estate,* 129 Pa., 631, 18 A., 554; *Squires* v. *Squires,* 65 W. Va., 611, 64 S. E., 911; *Kinyon* v. *Kinyon,* 72 Hun, 452, 25 N. Y. S., 225, cited with approval in *Gore* v. *Howard,* 94 Tenn., 577, 30 S. W., 730.

▪ Appellants, under the statutes of descent and distribution, were only entitled to receive out of their grandfather's estate "the same portion of the estate . . . as their parent would have been entitled to if living." If John Forbes had been living, he would not have been entitled to receive any portion of that estate. Having been paid an amount which he agreed was in full settlement and adjustment of any right, title, or claim he might have in the property of his father, he would have had no portion of the estate coming to him, had he survived his father.

▪ Where an heir releases to his ancestor his right of inheritance, whether his children will share in the estate of the ancestor depends on the doctrine of advancement. It is held that if the consideration for the release is an advancement in full, the releasor's children are barred. *Simpson* v. *Simpson,* 114 Ill., 603, 2 N. E., 258, 4 N. E., 137, 7 N. E., 287; *Donough* v. *Garland,* 269 Ill., 565, 109 N. E., 1015, Ann. Cas., 1916E, 1238; *Quarles* v. *Quarles,* 4 Mass., 680; *Power's App.,* 63 Pa., 443; *Coffman* v. *Coffman,* 41 W. Va., 8, 23 S. E., 523; *Neil* v. *Flynn Lumber Co.,* 82 W. Va., 24, 95 S. E., 523; 18 C. J., 862; 1 R. C. L., 674.

Appellants rely upon the case of *Johnson* v. *Breeding,* 136 Tenn., 528, 190 S. W., 545, L. R. A., 1917C, 266, where an heir conveyed his expectancy in his mother's estate to a third party and predeceased his mother. We

agree with the chancellor in saying that this case is not determinative of the case at bar for the reason the law of advancement is here involved. We have considered the authorities cited by able counsel for appellants, and find that they are either distinguishable from the instant case, or else are from jurisdictions following the minority rule on the questions here involved.

The result is that the decree of the chancellor must be affirmed, and the cause remanded.